UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KIM JAMES | * | CIVIL ACTION NO. 10-3912 |
|     Plaintiff | * | |
| | * | SECTION: H |
| | * | JUDGE JANE TRICHE MILAZZO |
| VERSUS | * | |
| | * | |
| | * | MAGISTRATE: 3 |
| ASI FEDERAL CREDIT UNION | * | MAG. DANIEL KNOWLES, III |
|     Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AND REASONS**

The matter before the Court is a Motion for Summary Judgment filed by Defendant, ASI Federal Credit Union [hereinafter "ASI"] (Doc. 21). For the following reasons, the motion is GRANTED.

**BACKGROUND**

Facts and Procedural History

On October, 5, 2009, plaintiff, Kim James ["James"], an African American female, was hired as an Operations Support Special in ASI's IT Department by Kevin Burke ["Burke"], ASI's Vice President of Information Technology and Security. Burke interviewed James in person in the fall

-1-

of 2009 and hired her, in part, because her resume included relevant computer operation experience.

At the time of James' hire at ASI, there were seven employees in the IT Department. Of the seven, two were African American; however, none of the other African American employees were working in James' position.

Once hired by ASI, James went through one week of general orientation and new employee training. During the training, James was instructed in ASI's anti-discrimination rules and was provided the ASI Employee Handbook. The handbook contains ASI's Policy Against Harassment which specifically prohibits harassment of any employees, applicants or customers. The handbook section on harassment further defines "harassment," explains when to make a report of harassment, and forbids retaliation for reporting harassment.

After orientation, James began to train primarily with Jean Mohammed ["Mohammed"], a white female. Eric West, an IT Project Manager, would offer occasional assistance during training. When Mohammed was out or was unwilling to answer James' questions or assist her, James went to Eric West, a white male, or Tiffany Mashia, an African American female, her co-workers in the IT department, and received answers from them.

There soon emerged a personality conflict between James and Mohammed. James complained to Burke that Mohammed did not treat her nicely and seemed reluctant to train her. In response, Burke arranged a meeting with James and Mohammed, and instructed Mohammed to answer James' questions.

James also worked with security guard, Terrell Spencer ["Spencer"], an African American male.

On November 5, 2009, Spencer, Mohammed and West reported that James had made inappropriate comment(s) regarding the relationship of Mohammed, a married female, and Spencer to ASI's Human Resources Specialist. Julie Schultz ["Schultz"], ASI's Employee Relations Coordinator, spoke to James about the incident. James admitted that she made the comment(s); however, told Schultz that it was intended to be a joke. James told Human Resources in a November 6, 2009 memorandum that she would stop all commentary.

On November 9, 2009, James was terminated by Burke and Schultz. Schultz informed James that it was management's decision to terminate her employment during the probationary period, i.e., the first ninety days of her employment. ASI did not give James a specific reason for her termination.

On October 21, 2010 James filed a Complaint against ASI Federal Credit Union. James alleges in her Complaint that ASI's conduct amounted to retaliation and discrimination based on race and gender.

In James' Complaint she asserts that on November 5, 2009 Spencer asked her to be his friend and to go out with him. She further alleges that when she rebuffed his advances, he reported her to Human Resources. James asserts that on November 5, 2009 she reported sexual harassment of her by Spencer to management. James alleges that she was terminated on November 9, 2009 in retaliation for her report.

In her complaint of discrimination based on race and gender, James alleges that Mohammed and Spencer were friends and that because of James' repeated refusals of Spencer's advances, Mohammed became increasingly reluctant to train James. James further alleges that when she complained to Burke about Mohammed's behavior, Mohammed responded by making accusations against her to Schultz. James' claim for racial discrimination is based upon the fact that the managers involved in the decision to discharge her, along with Mohammed, are Caucasian. In her sexual discrimination claim, she relies on the fact that management apparently believed the allegations of her male co-worker, Spencer, and not hers.

The Motion and Contentions of the Parties

ASI brought this Motion for Summary Judgment, arguing that plaintiff's claims of retaliation and discrimination are not supported by facts, and therefore should be dismissed. ASI notes that the undisputed facts show that Plaintiff could not get along with her co-workers and was terminated after only five weeks of employment because of her unprofessional gossip, antagonistic attitude, failure to progress in her training and poor performance. Additionally, ASI notes that Plaintiff never complained about sexual harassment or race discrimination to ASI; and failed to provide any evidence in support of her allegations, other than her own self-serving opinion.

ASI argues that plaintiff's claim of sexual harassment by her co-worker, Spencer, should be dismissed because James' failed to prove that she was subjected to unwelcome sexual harassment.

Additionally, ASI contends that James' claim for discrimination under Title VII of the Civil

Rights Act must be dismissed because James is unable to establish any triable issue of fact to meet her prima facie burden under the *McDonnell Douglas* framework.[1] ASI highlights the fact that Plaintiff was terminated because of her failure to progress as expected with training; that she seemed disinterested in her job at ASI, and that she caused disruption of operations at ASI with her provocative behavior. Ultimately, Plaintiff's subjective belief that she was discriminated against is insufficient for a causal connection and her naked assertions are not sufficient to survive summary judgment under the precedent of the United States Supreme Court and the United States Fifth Circuit Court of Appeals. Finally, ASI asserts that Plaintiff's retaliation claim must be dismissed because James cannot provide any factual support for its basis. ASI notes that Plaintiff fails to put forth any evidence that that she engaged in a protected activity and there was a causal link between the protected activity and the adverse action.

Kim James concedes that she did not bring a claim of sexual harassment against ASI.

James does argue that she was retaliated against in violation of Title VII. While James concedes that her complaints against Mohammed were based primarily on a personal conflict; she contends that she was terminated because of her complaint to management about Spencer's "advances", and that the close timing between her reports of Spencer's advances and her termination support her claim of retaliation. James denies that she engaged in gossip, created a

---

[1] The *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case with the following elements: (1) She was within the protected class; (2) She was qualified for the position at issue;(3) Her employment status was adversely affected; (4) She was replaced by someone outside the protected group, or other similarly situated employees outside the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)

conflict with her co-workers, and had performance issues; and argues that ASI did not have a legitimate, non-discriminatory reason for her termination . She further asserts that she was never in violation of ASI policy; and received no written warnings, suspensions, or other disciplinary action.

James further opposes the Summary Judgment Motion by stating that she was discriminated against because of her race. In support for her claim, she notes that she was the only African-American employee in her position and that all of the managers and decision makers were Caucasian.

ASI's Reply Memorandum in Support of its Motion for Summary Judgment notes that Plaintiff's sole support for her Opposition to the Summary Judgment is a self-serving declaration drafted after her deposition. They argue that the declaration is filled with Plaintiff's own opinions, interpretations and spurious accusations - none of which create any dispute regarding the relevant and material facts that should be considered by the Court under summary judgment.

Finally, ASI argues that plaintiff cannot base her race discrimination claim based on specious assertions that are irrelevant and fail to meet the minimal pleading requirement under Title VII. Specifically, ASI points out that plaintiff cannot establish that she was qualified for her job and that she was not replaced by or treated less-favorably than someone outside of her protected group. ASI further argues that plaintiff cannot show that ASI's motivation for terminating her was pretextual as is required by law.

**LAW AND ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District,* 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Sexual Harassment

James concedes that she makes no claim for sexual harassment (Doc. 32, p.5); therefore, summary Judgment is GRANTED as to sexual harassment.

Retaliation

In plaintiff's Complaint she alleges that on November 5, 2009, Spencer asked her for the fourth time to be his friend and to go out with him. In her affidavit, James claims that Spencer repeatedly asked her out, looked in her purse (with another co-worker) to see if it was real, and brushed against her chest pretending to grab a CD. In her deposition, she notes that she reported sexual harassment to management about the time she first started working with "Jean."[2] James also claims that on November 6, 2009, Spencer made unknown allegations about James in order to cover up his sexual harassment. James alleges that the discharge was a retaliatory action that took place because of Ms. James complaints about Spencer's sexual harassment and Mohammed's behavior.

For a retaliation claim, a plaintiff must prove: (1) that she engaged in a protected activity; (2) an adverse action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-557 (5th Cir. 2007). Summary judgment is appropriate when the plaintiff cannot establish all three elements. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

If a plaintiff makes a prima facie showing, then the plaintiff has raised an inference of intentional discrimination. *Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir. 1996); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To overcome this retaliatory inference, the defendant must produce evidence of a legitimate nondiscriminatory purpose for the employment accusation. *Gee v.*

---

[2] Doc. 21: Ex. 3, p. 69

*Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. *Id*.

It is undisputed that an adverse action was taken against James when she was terminated by ASI on November 9, 2009. Therefore, the issues before this Court are whether plaintiff can establish that she engaged in a protected activity; and whether there is a causal link between the protected activity and the adverse action.

(1) Protected Activity

Plaintiff acknowledges that the complaints against Mohammed were based primarily on a personality conflict and do not fall within the purview of Title VII of the Civil Rights Act. On the other hand, James asserts that she was terminated when she reported the sexual harassment of Spencer, which is an unlawful employment practice under Title VII.

"An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996); citing 42 U.S.C. § 2000e-3(a) and *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

In Plaintiff's deposition, she testified that Spencer asked her for her telephone number on three different occasions. She acknowledged that she did not report this actual behavior to her supervisor, Burke; but, did report that she ignored Spencer's "advances." She did not explain what

that meant. James did not complain to any other member of management or human resources about Spencer's "advances" (or request for her telephone number). Kevin Burke denies that this report was made. Linda Borne and Julie Schultz confirm that James never complained to them about sexual harassment or discrimination in any form.

Plaintiff argues that the report of ignored "advances" to Burke is sufficient to carry her burden of showing sexual harassment. In her view, "advances" can only mean one thing in this context. Plaintiff's assertions, however, do not comport with this circuit's precedent. The Fifth Circuit has consistently held that an employer must be put on notice, with specificity, of the protected activity in a retaliation claim. *See Tratree v. BP N. Am. Pipelines, Inc.,* 277 F.App'x 390, 395 (5th Cir. 2008) (holding that Plaintiff did not engage in protected activity when he did not put his employer on notice of that he was complaining of the discriminatory treatment as it related to age); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation when the Plaintiff failed to show that she complained of racial or sexual harassment, only harassment).

Although this court is mindful that a Motion for Summary Judgment should be looked at in the light most favorable to the opposing party, this Court finds that James' deposition testimony, pleadings and exhibits cannot shoulder her burden of demonstrating that she complained of sexual harassment to her employer. There is no evidence that ASI was ever put on notice of sexual harassment. When James made a statement to Burke about "advances," sex was never mentioned. James' self-serving statements in her deposition and affidavit that she reported the unspecified

and undescribed "advances" to Burke are insufficient to carry Plaintiff's burden in showing that she made a claim of alleged sexual harassment. *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994)(holding that "the plaintiff [can]not rest on his allegations... to get to [the factfinder] without any significant probative evidence tending to support the complaint"). Therefore, this Court finds that Plaintiff fails to demonstrate that she engaged in a protected activity under Title VII.

(2) Causal Connection

Even if James did engage in protected activity, James still cannot establish a causal connection between reporting Spencer's "advances" and her termination. In evaluating the claimed causal connection, this Court may look to (1) James' past disciplinary record, (2) whether ASI followed a policy in penalizing James, and (3) the temporal proximity between James' protected activity and ASI's adverse actions. *See DeHart v. Baker Hughes Oilfield Operations*, Inc., 214 F. App'x 437, 442 (5th Cir. 2007) (*citing Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)). This Court finds that these three factors do not reveal a causal connection between Ms. James mentioning of "advances" to Burke and her termination.

ASI documents that James was terminated due to her failure to get along with co-workers. It is undisputed that James had tension with Mohammed from the beginning of her tenure with ASI. Early in her training, James complained to Burke that Mohammed did not treat her nicely and seemed reluctant to train her. As a result, Burke arranged a meeting with James and Mohammed and instructed Mohammed to train plaintiff and answer all of her questions. Additionally, Burke

received complaints by other members of the IT department that James spent a lot of time texting and/or talking on her cell phone during work time rather than learning her new job. Finally, ASI management received complaints of James' inappropriate comments regarding the relationship between Spencer and Mohammed.

In her four weeks of employment with ASI, James' disciplinary record indicates that there were consistent problems with her and other employees. These complaints are corroborated in ASI's internal documents concerning James' termination which states that she was terminated because of conflicts with co-workers. In response, James relies on her self serving affidavit to counter the evidence presented by ASI to show that her disciplinary record was unrelated to her termination. These self-serving factual assertions are insufficient to raise factual issues and to overcome the affidavits submitted by ASI and its supporting documentation. *See C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.,* No. 10-30950, 2011 U.S. App. LEXIS 21581, at *9-10 (5th Cir. 2011)(holding that a Plaintiff's self-serving affidavit, without more evidence, cannot defeat summary judgment).

The ASI handbook outlines what the disciplinary action to be taken in the case of procedural infractions that do not result in a loss for ASI employees who have been employed for less than six months. The procedures are as follows:

> First Occurrence - Written Warning
> Second Occurrence - 30 days probation
> Third Occurrence - 60 days probation. This is the final written warning.
> Fourth Occurrence - Review for possible termination.
> ASI RESERVES THE RIGHT TO CONSIDER TERMINATION AT ANY TIME IN LIEU OF THE PROCEDURES OUTLINED ABOVE.

This Court finds that Plaintiff's reliance on *Roberts v. Titus County Memorial Hosp.* 129 Fed.Appx. 82 (5th Cir. 2005) for the proposition that the policy is vague and ambiguous is misplaced. This Court finds the policy is clear on its face that ASI may consider termination instead of the warning and probation system. Finally, this Court notes that Louisiana is an at-will employment state and an employee may quit or be discharged at any time without explanation. *Johnson v. Acosta*, NO. 10-1756, 2010 U.S. Dist. LEXIS 109032, at *18 (E.D. La. Oct. 12, 2010 (holding that an employer is at liberty to dismiss an at-will employee at any time for any reason without incurring liability for the discharge and that there be no reason at all for the termination). Plaintiff was an at-will employee that agreed to abide by the clear content of ASI's policies. In sum, James fails to bring forth any triable issues of fact that ASI failed to follow its policy in her termination.

Finally, James alleges in her complaint that her termination came shortly after her report of Spencer's "advances". In support thereof she attached her personal affidavit swearing that she reported the "unwanted advances" to Burke. Oddly enough, her sworn deposition testimony reveals that her report to Burke occurred on the first week that she was "with Jean [Mohammed]" - a full month prior to her termination.[3] Burke denies ever receiving the complaint from James.

As noted previously, plaintiff's self serving affidavit fails to establish triable factual issues sufficient to overcome the factual burden for summary judgment.

Based on the reasons as outlined by the Court, summary judgment is GRANTED as to the

---

[3] Doc. 21: Ex. 3, p. 69

Retaliation claim.

Gender And Race Discrimination

It is "unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his or her terms, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

If the plaintiff does not provide any direct evidence of discrimination based on her race or gender, the Court must proceed under the *McDonnell Douglas* framework. The *McDonnell Douglas* framework first requires the plaintiff to establish a prima facie case with the following elements: (1) She was within the protected class; (2) She was qualified for the position at issue; (3) Her employment status was adversely affected; (4) She was replaced by someone outside the protected group, or other similarly situated employees outside the protected class were treated more favorably.

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer a legitimate non-discriminatory reason for its decision. If the employer meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Singh v. Shoney's, Inc.* 64 F.3d 217, 219 (5th Cir. 1995) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)).

As an African-American female, Plaintiff is a member of two protected classes - race and

gender. It is undisputed that when the plaintiff was terminated on November 5, 2009, thus her employment was adversely affected. Therefore, this Court must determine whether the Plaintiff can establish that she was qualified for the position and that she was replaced by someone outside of her protected group.

(1) Qualified For the Position

Burke, ASI's Vice President of Information Technology and Security, interviewed James and recommended to his superiors that she be hired. His recommendation was based on the interview, and the fact that she had a qualified resume which included relevant computer operation experience.

In *Brown v. CSC Logic, Inc.,* the Fifth Circuit held that there is an inference that discrimination is not the motive behind a challenged employment action where the individual making the hiring decision was the same as the individual making the decision to terminate. *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir. 1996), overruled on other reasons. This is known as the "same actor" inference, in which the Fifth Circuit has accepted. *See Hervey v. Mississippi Dept. of Educ.*, 404 Fed.Appx. 865, 871 (5th Cir.2010). In the case at bar, Burke made the hiring and termination decisions surrounding James. Burke conducted a face to face interview with James, was aware of her race and gender when he hired her and confirmed that James' race or gender played no role in his decision to hire or terminate her.

James' self serving affidavit falls woefully short of the evidentiary requirement necessary to establish issues of fact regarding whether or not she was in fact "qualified." An affidavit must

be based on "personal knowledge and containing factual assertions" to create an issue of fact. *C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.*, No. 10-30950, 2011 U.S. App. LEXIS 21581, at *9-10 (5th Cir. Oct. 24, 2011); s*ee also Di Ann Sanchez v. Dallas/Fort Worth International Airport Board,* No. 10-10939, 2011 U.S. App. LEXIS 17505 (5th Cir. Aug. 22, 2011)(in upholding the District Court's granting of summary judgment, the Fifth Circuit held that plaintiff's self-serving affidavit, without more evidence, could not defeat summary judgment). Consequently, this Court finds that James has failed to establish sufficient issues of fact that she was indeed qualified for her position at ASI at the time that she was terminated.

(2) Replaced Someone Outside the Protected Group, or Other Similarly Situated Employees Outside the Protected Class were Treated More Favorably

James was replaced by Jonathan Mariduena, a hispanic male and a member of a racially protected group. Plaintiff can also bring evidence that someone similarly situated not in the protected class was treated favorably. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Plaintiff provides no evidence to show that she was replaced by someone outside of the protected group or that other similarly situated employees were treated more favorably. Plaintiff relies on insinuations and conclusory accusations in her affidavit.

James believes that Mohammed treated her differently because she was a black woman, but has no factual evidence to support that belief. In fact, plaintiff admits that Mohammed got along well with other women, including Tiffany Mashia, another black female within the IT Department at ASI. James notes that Tiffany Mashia, a similarly situated black female at ASI, was

always treated fairly at ASI. Additionally, the Affidavit provided by Mashia reveals that she never experienced or witnessed any harassment or discrimination at ASI.

James concedes that she heard no racial slurs while at ASI either directed at her or in her presence. Additionally, James was unable to identify anyone outside of her protected classes who was treated more favorably than her in their first ninety days of employment.

Plaintiff claims that ASI took the assertions of Mohammed, a white woman, and Spencer, a black male, "over her word." This Court finds that James' mere belief that a white female and black male had more credibility is not enough to shoulder her burden of proving that other similarly situated employees outside the protected class were treated more favorably.

In sum, this Court finds that plaintiff is unable to establish facts sufficient to meet her burden of proof on discrimination. "A plaintiff's subjective beliefs of discrimination are insufficient to support a claim of discrimination." *Hill v. New Alenco Windows, Ltd.* 716 F.Supp.2d 582, 598 (S.D.Tex.,2009) *citing Little v. Republic Ref. Co.,* 924 F.2d 93, 96 (5th Cir. 1991)

Based on the reasons as outlined above, summary judgment is GRANTED as to the race discrimination and sex discrimination claims.

**CONCLUSION**

Ultimately, this Court finds that the James has failed to raise any issue of triable fact on her claims of discrimination and retaliation. For the foregoing reasons, the Motion for Summary Judgment, filed by ASI Federal Credit Union(Doc. 21) be and is hereby GRANTED and the Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana on this 13th day of January, 2012.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**